THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JASON LEOPOLD, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DEPARTMENT OF STATE, )<br>)<br>Defendant. )<br>) | Civil Action No.: 1:14-cv-1760 (TSC) |

## SECOND DECLARATION OF ERIC F. STEIN

Pursuant to 28 U.S.C. § 1746, I, Eric F. Stein, declare and state as follows:

1. I am the Director of the Office of Information Programs and Services ("IPS") of the United States Department of State (the "Department" or "State") and have served in this capacity since January 22, 2017. Previously, I served as the Acting Director since October 16, 2016, and as the Acting Co-Director since March 21, 2016. I am the State official immediately responsible for responding to requests for records under the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552, the Privacy Act of 1974, 5 U.S.C. § 552a, and other records access provisions. As the Director of IPS, I have original classification authority and am authorized to classify and declassify national security information. Prior to serving in my current capacity, I worked directly for State's Deputy Assistant Secretary ("DAS") for Global Information Services ("GIS") and served as a senior advisor and deputy to the DAS on all issues related to GIS offices and programs, which include IPS.

2. I am familiar with the efforts of Department personnel to process the FOIA request that is the subject of this litigation, and I am in charge of coordinating the agency's

search and processing efforts with respect to that request. I make the following statements based upon my personal knowledge, which in turn is based upon information furnished to me in the course of my official duties.

3. In my previous declaration filed on April 7, 2020 (ECF 55-1), I explained that the Department's FOIA processing capabilities were seriously compromised by the COVID-19 pandemic, that I paused the scheduling of all REAs effective March 19, 2020, and that IPS as a whole had transitioned to maximum telework. With respect to this case in particular, I explained that the document review platform on which the documents for this case are stored ("FREEDOMS 2") is not accessible via telework and that, as a result, the Department would be unable to process documents in response to the FOIA requests in this case until FOIA staff were able to safely return to their Department workstations.

4. In this declaration, I do not repeat all of the details provided in my prior declaration, which provided accurate and important details about the overall impact of the COVID-19 pandemic on the Department's FOIA operations. The purposes of this declaration are to: 1) recount some of the efforts the Department has taken to continue litigation and non-litigation operations to the greatest extent practicable during the COVID-19 pandemic; 2) describe the impact on FOIA processing of the Department's recent entry into Phase One of its three-phase approach for the resumption of normal operations; and 3) provide the Court with additional detail about the Department's capacity to process the potentially responsive documents in this specific case.

5. In short, a small number of FOIA litigation staff returned to their Department worksites upon the Department's entry into Phase One of its plan for resumption of normal operations. Two FOIA litigation employees who were previously assigned to this case have

2

returned to the Department worksite on a part-time basis. These employees will soon resume processing documents for this case and others to the extent possible and within the constraints of their on-site schedules and capacities. Thus, while the Department's ability to process documents for cases in FREEDOMS 2 remains severely constrained—and will remain constrained until the Department returns to normal operations—the Department anticipates being able to make a production of responsive documents on or before August 18, 2020; however, the Department remains unable to process documents for this case at the previously ordered rate.

6.     Accordingly, the Department respectfully requests the Court set a modified production schedule, as described below, whereby the Department is not required to process a set number of pages each production cycle.

### State's Efforts to Resume FOIA Processing Remotely and Guidelines for Ramping Up On-Site Operations

7.     Beginning in March 2020, the Department obtained formal or informal stays in approximately 95 FOIA litigation cases, including this case. These stays were obtained due to the Department's inability to meet existing processing and production deadlines due to the COVID-19 emergency, as discussed in my prior declaration. Concurrently with seeking these stays, IPS leadership prepared approximately 380 FOIA and non-FOIA employees to telework (many for the first time ever) and prepare for the REA scheduling pause noted above.

8.     From April to May 2020, IPS developed and implemented plans to equip approximately 30 FOIA litigation ("REAs") to telework,[1] and in May and June 2020, the

---

[1] As I explained in my prior declaration, REAs are retired Foreign Service Officers hired by IPS to review and process documents in response to FOIA requests in order to leverage these individuals' knowledge of the Department. FOIA analysts are responsible for performing searches for potentially responsive documents in centralized systems, tasking searches to Department components, collecting potentially responsive documents, ingesting documents into the review platform, coordinating REAs' review of those documents, preparing productions, and compiling declarations and *Vaughn* indexes for cases in litigation.

3

Department resumed its processing of unclassified records in the subset of FOIA litigation cases being processed on the new FOIAXpress platform—generally, those filed in FY 2020—using the telework functionality of FOIAXpress. The Department has made productions, and will continue making productions, in its FOIAXpress cases by processing the potentially responsive, unclassified documents remotely available on OpenNet. (As noted above, however, the documents at issue in this case reside on FREEDOMS 2, which cannot be accessed remotely.)

9. On April 20, 2020, the Office of Personnel Management directed that plans for ramping back up Federal Government operations will follow the national guidelines for *Opening Up America Again*. Those guidelines include a phased approach for the resumption of normal activities, which can begin only after certain epidemiological "gating criteria" are met on a location-by-location basis. Consistent with this guidance, the Department is following a three-phased approach for resumption of operations.

10. Between April 20 and June 15, 2020, the Department remained unable to begin the first phase of that three-phased approach because the necessary criteria had not been met. As a result, the Department's ability to process documents for this case and all other cases in FREEDOMS 2 remained unchanged, as FOIA staff remained unable to access their Department workstations and therefore unable to access FREEDOMS 2 or take any action with respect to the potentially responsive documents in this case.

### State's Current On-Site FOIA Processing Capabilities

11. On June 15, 2020, the Department entered Phase One of its three-phase approach for the resumption of normal operations. While Phase One is a first step on the path to resumption of normal operations, Phase One still requires that offices continue to maximize telework. Accordingly, due to ongoing precautions taken to reduce the likelihood of

4

transmission or community spread of COVID-19 within the workplace, the Department's FOIA processing capabilities remain severely constrained during this phase, with only a small fraction of its reviewing personnel onsite at Department workstations. The majority of the Department's FOIA staff continues to telework.

12. At the time of this Declaration, 3 of the Department's 21 FOIA litigation analysts and 4 of the Department's 47 REAs assigned to process FOIA litigation cases have returned to their Department workstations, the majority only on a part-time basis. That is, only approximately 10% of State's FOIA-litigation-processing personnel have returned to their Department workstations on a part-time basis. The particular analysts and REAs who have returned onsite have done so of their own volition pursuant to the Department's reopening guidance. The analysts and REAs who have returned to their Department workstations have access to FREEDOMS 2 and the classified network while in the office.

13. IPS has developed and is implementing a plan to direct the limited onsite resources available during Phase One to maximize their impact across the Department's FOIA litigation caseload. Pursuant to this plan, I have instructed the analysts and REAs who are in the office to resume processing the FREEDOMS 2 cases to which they were assigned prior to the COVID-19 pandemic. While in the office, those analysts and REAs will prioritize completing tasks on their cases that cannot be accomplished while working remotely—namely, reviewing records in ClassNet (particularly in cases for which there is no more work that can be done remotely on unclassified systems) and resuming processing of the cases in FREEDOMS 2. Those analysts and REAs are already familiar with the documents in the cases to which they were assigned and are therefore able to process those documents more accurately and efficiently

than they would be able to process documents for cases with which they are unfamiliar and have less experience.

14. To the extent the analysts and REAs who have returned to their Department workstations have surplus capacity after managing their pre-pandemic caseload, the Department's plan is for them to direct that excess capacity to assist with the review of documents for other cases for which no progress can be made via telework and for which the assigned analysts or REAs have not returned to Department workstations. This will allow at least some progress to be made on a broader set of cases than if analysts and REAs worked only on their pre-pandemic caseload. The Department is instructing onsite analysts and REAs, when using this excess capacity, to prioritize two categories of cases: 1) cases for which all processing of both classified and unclassified records is almost complete, and 2) cases involving requests for which the Department granted expedited processing.

15. Despite the presence of this limited onsite FOIA staffing and the above-outlined directives that aim to maximize their impact across the Department's caseload, the Department's ability to process cases in FREEDOMS 2 and other documents on ClassNet remains severely constrained during Phase One. Even for the cases (like this one) for which an assigned analyst or REA has returned to the office, the Department will not be able to process documents at the same rate that it would under normal circumstances. IPS normally assigns one analyst and two REAs to each FOIA litigation case, with additional REAs being assigned to cases like this one with court-ordered processing minimums that exceed State's standard rate. Because so few REAs and analysts have returned to the office, even those cases for which processing resumes will remain understaffed as compared to normal operations. Moreover, for many FREEDOMS 2 cases, the originally assigned analysts and REAs have not returned to the office, meaning that any

processing on those cases would occur only to the extent that onsite analysts and REAs have excess capacity, as explained above.

16. Although IPS has not yet finalized its processing plans for Phase Two or Phase Three, it anticipates following the same basic framework as it has during Phase One, albeit with more FOIA personnel returning to part-time onsite operations in each successive phase. The Department is currently monitoring trends in COVID-19 cases and other local conditions to determine its readiness to move to Phase Two. Due to the shifting nature of the global COVID-19 pandemic and the various stakeholders and other considerations relevant to decisions affecting the safety and security of Department personnel and their surrounding communities, State cannot currently predict when it will be able to enter Phase Three. State will continue to provide updates about its current and anticipated future operational capacity.

17. In addition, the constraints on the Department and on other Executive agencies will likely create serious difficulties in obtaining necessary clearances from other Department components or other Executive Branch components in Phase One and beyond. As explained in my prior declaration, IPS does not release documents in FOIA until it receives clearances from the internal Department components and external Executive Branch components that have equities in the information in those documents. Because many internal Department components and external Executive Branch components are operating with reduced resources and reduced access to classified systems, IPS will likely experience delays in obtaining clearances, and thus in its ability to release documents requiring such clearances.

18. In summary, the Department's entry into Phase One is an important step toward the Department's return to normal operations and has allowed a small number of FOIA staff to regain access to FREEDOMS 2 for the first time since the Department moved to maximum

telework. IPS has implemented a plan to maximize the impact of these limited resources across all of the Department's FREEDOMS 2 cases, but onsite FOIA processing is still severely constrained and will likely remain that way until the Department returns to full operations.

## FOIA Processing of This Case

19. In accordance with this Court's Order of January 13, 2015, the Department has processed records and produced the non-exempt portions of responsive records on rolling four-week basis since March 2015, with a minimum of at least 700 pages of documents reviewed per every four weeks. The Department has reviewed a total of 48,292 pages, processed 1,526 responsive documents, and made 65 interim releases of documents. The Department's responsive determinations, redactions, internal and external clearances, and other comments regarding each processed document are all logged in the FREEDOMS 2 system.

20. As noted above, I instructed the analysts and REAs that are in the office to resume work on the FREEDOMS 2 cases to which they were assigned prior to the COVID-19 pandemic. At the time of this declaration, the analyst originally assigned to this case has returned on a part-time basis to a Department worksite, as has one of the REAs that has previously been assigned to this case. Over the coming weeks, these FOIA employees will continue assist in processing additional documents for this case, but will unlikely be able to process documents at the rate of 700 pages per every four weeks at which the Department was processing documents prior to the pandemic.

21. Many of the documents at issue in this case contain classified information, and virtually all of them require internal and/or external consultations. Because the consultation process is somewhat unpredictable at this time—especially for documents containing classified information because of the wide variation in access to classified systems within the Department

and across the Executive Branch—it is difficult to predict when such consultations can be completed.

22. Considering all of the factors explained above, the Department hopes to be in a position to make its next production of responsive, non-exempt documents, to the extent any such documents are ready for release, on or before August 18, 2020. The Department does not, however, expect to be able to process and finalize 700 additional pages for this production, or for any productions at least during Phase One, and therefore respectfully requests that the Court enter a production schedule whereby the Department is not required to process a set number of pages each production cycle. The Department will then be in a position to resume rolling monthly productions, and will in good faith endeavor to process as much as possible within the constraints described above.[2]

## Conclusion

23. The Department remains committed to complying with all court orders and meeting all of its FOIA demands to the best of its ability, and it will utilize its constrained resources to process FOIA requests to the extent practicable under these extraordinary circumstances. However, because of the ongoing impact of the COVID-19 pandemic described herein, the Department's ability to do so remains severely compromised and the Department therefore respectfully requests the production schedule set forth above.

\*\*\*

---

[2] The ability of the Department to continue to process and produce documents for this case is of course also contingent on the public health status regarding the ongoing COVID-19 pandemic, particularly in the D.C. region. IPS will continue to follow Executive Branch and/or Department guidance issued in response to the ongoing situation.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 6th day of July 2020, Washington, D.C.

*[signature]*

Eric F. Stein